## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Tracy Ehmann,

      Plaintiff,

      v.

Oshkosh Corporation, Inc.,
a Foreign Corporation,

      Defendant.

Case Number: 8:19 cv 1445 T35cpT

Civil Action

Jury Trial Demanded

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff, Tracy Ehmann, ("Plaintiff"), is an artist and industrial designer who was employed by Oshkosh Corporation, Inc., ("Defendant"), from about March of 2013 until April 20, 2018, on which date Plaintiff was discharged from employment by Defendant.

2. Defendant is a corporation headquartered in Oshkosh, Wisconsin, which owns and controls manufacturing facilities throughout the United States.

3. Defendant engages in the design, production, and sales of a wide variety of specialty vehicles and access equipment including military trucks.

4. Plaintiff's husband, Eric Ehmann, formerly a production worker for Pierce Manufacturing, Inc., ("Pierce"), a wholly owned subsidiary division of Defendant, commenced a class and collective action in federal district court in the Eastern District of Wisconsin, Green Bay Division, against Pierce on February 29, 2016, alleging violations

of the wage and overtime provisions of the Fair Labor Standards act of 1938, as amended, 29 U.S.C. §§ 201, et seq., ("FLSA"), an action which resulted in the payment of several million dollars in backpay to a class of Pierce workers.

5. Eric Ehmann was subsequently discharged in about March of 2017, and in response filed suit, again, in federal district court in the Eastern District of Wisconsin, Green Bay Division, alleging that Pierce violated anti-retaliation provisions of the FLSA.

6. In February of 2018 Eric Ehmann's suit was concluded with a confidential settlement, while all other pending matters between Eric Ehmann and Pierce were also resolved.

7. On February 26, 2018, Defendant provided a "FINAL WARNING" letter, ("final warning"), to Plaintiff, outlining stringent requirements concerning Plaintiff's work schedule and work rules.

8. On April 20, 2018, Defendant then discharged Plaintiff, ostensibly for violating the terms of the final warning.

9. Plaintiff now asserts, as is illustrated by the evidence and as the basis for this action, that her discharge was in response to her husband's protected activities relating to Defendant, constituting retaliation in violation of the FLSA.

10. Plaintiff therefore brings this action pursuant to 28 U.S.C. § 1331 for the purpose of obtaining relief under the FLSA in the form of reinstatement, promotion, monetary compensation for damages including unpaid wages and unaccumulated/unpaid fringe benefits (including but not limited to unpaid employer contributions to Plaintiff's 401(k) retirement plan), compensatory damages for economic harm suffered as a result of the loss of employer-sponsored health insurance coverage, liquidated damages, pre-judgment interest, attorney fees, reimbursement of costs, and any other relief that the Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges violations of 29 U.S.C. § 215(a)(3) and is brought pursuant to 29 U.S.C. § 216(b).

12. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(c)(2), and 1391(d), because Defendant is a corporation which resides in this District.

## PARTIES

13. Plaintiff is an adult resident of Appleton, Wisconsin.

14. Defendant is a corporation which is headquartered at 2307 Oregon Street, Oshkosh Wisconsin 54902, and which does extensive business in, owns and controls manufacturing facilities in, owns real property in, and has extensive contacts and agents in, this District, including specifically in Manatee County at 1512 38th Avenue East, Bradenton, Florida 34208, as well as in Pinellas County.

15. Defendant's registered agent for service of process in the State of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

16. Defendant was an employer of Plaintiff, and Plaintiff was employed by Defendant, pursuant to 29 U.S.C § 203.

17. Plaintiff was employed by Defendant as a non-exempt, hourly employee within the last fourteen months of the date of filing of this Complaint.

18. Plaintiff performed compensable work at a physical location in Oshkosh, Wisconsin, owned and operated by Defendant, as well as in other states, at the direction and under the supervision of Defendant.

19. Plaintiff was economically dependent on Defendant, which engaged Plaintiff for the purpose of performing compensable work for Defendant.

20. Plaintiff's hours of work were tracked and recorded by Defendant.

21. Defendant supervised Plaintiff's activities during her daily working shift.

22. Defendant had the ability and authority to hire, terminate, promote, demote, and/or suspend Plaintiff.

23. Defendant had the ability and authority to review Plaintiff's work performance.

24. Defendant established the work rules, policies, and procedures by which Plaintiff abided in the workplace.

25. Defendant controlled the terms and conditions of Plaintiff's employment.

26. Defendant established Plaintiff's work schedules and provided Plaintiff with work assignments and hours of work.

## FACTS

27. Plaintiff is a trained, highly skilled and talented artist and designer, with a résumé that includes high-profile commissioned artistic sculpture and design work.

28. Sometime in or about 2012 Plaintiff applied to Defendant for a position as an industrial designer in Defendant's industrial design department in Oshkosh, Wisconsin, and was subsequently hired and began working for Defendant in about March of 2013.

29. Over the course of her five-year tenure working for Defendant, Plaintiff's role in the industrial design department steadily expanded beyond just delivering superior design work, as her manager increasingly relied on her assistance in managing the department in terms of supervising her colleagues, providing feedback, developing new markets, and engaging in general planning, development, and project management.

30. Plaintiff made many significant and crucial contributions to a number of high-profile projects, which consistently earned her well-deserved accolades from her manager and senior company executives, up to and including the CEO of Oshkosh Corporation.

31. On many occasions Plaintiff worked around the clock, and/or traveled, and/or worked on weekends and/or during hours outside of a "9-to-5" workday, as well as made numerous personal sacrifices in terms of her family in order to prioritize her career in the immediate term so that in the long term she and her family would benefit.

32. Prior to and during the course of (as well as subsequent to) her tenure, Plaintiff suffered from Crohn's disease, a chronic medical condition whose symptoms vary significantly (including sometimes on a daily, and even intra-daily, basis) in frequency and severity, but which overall Plaintiff is able to manage with the help of regular medical care and prescription drugs.

33. During the course of her tenure, Plaintiff also intermittently suffered episodes of mental illness, attributed by her and her physicians to, primarily, work-related stress and anxiety.

34. Plaintiff's chronic disease and periodic mental illness resulted in her physician occasionally certifying her as being temporarily medically unable to work, as well as recommending flexibility with respect to Plaintiff's daily work schedule.

35. At all times during the course of Plaintiff's tenure, up until imminently before her discharge, Defendant always accommodated Plaintiff with respect to her medical conditions by affording her a flexible schedule and periodic time off from work.

36. In fact, Defendant always afforded the same flexibility of scheduling to all of the members of Plaintiff's department, even those without a chronic medical condition, and that flexibility comported with Defendant's stated effort to offer a progressive workplace environment in which "work-life balance" was considered crucial to their employees' success.

37. Up until imminently before her discharge, at no time did Defendant ever refuse to either permit or excuse any of Plaintiff's needs with respect to flexible scheduling or time off from work.

38. At all times during the course of Plaintiff's tenure, up until imminently before her discharge, Defendant permitted Plaintiff to work remotely (e.g., from home) by use of a secure, internet-connected notebook computer. This was a convenient option that allowed Plaintiff to perform work during instances when symptoms of her medical condition would have otherwise made it impossible.

39. In fact, Defendant always afforded the option to work remotely to not just Plaintiff but to all members of the department, even those without a chronic medical condition. Again, this seems to comport with Defendant's stated position regarding employees' "work-life balance".

40. Up until imminently before Plaintiff's discharge, at no time did Defendant ever refuse or restrict her ability to work remotely.

41. In February of 2018, Plaintiff's husband settled his FLSA retaliation suit, as well as all other claims relating to Defendant.

42. Defendant then issued to Plaintiff the final warning, dated February 26, 2018, which contained a number of prescriptions and proscriptions, including requirements that Plaintiff must arrive to work daily no later than 8:30 am; that she must not work past 6:00 pm; and that she is not allowed to work remotely.

43. In response to the final warning, Plaintiff diligently attempted to abide by the new restrictions but also questioned Defendant as to why she was the only member of her department to be subjected to such rigorous new rules, while her colleagues continued to enjoy flexible schedules and the ability to work remotely.

44. Plaintiff received no substantive response to her inquiries, and on April 20th, 2018, despite having conformed to the requirements of the letter, she was notified that she was discharged from employment, effective immediately.

45. Defendant has provided three reasons for discharging Plaintiff: working outside of core business hours; having unauthorized photos of company property on her phone; and saying negative things about colleagues.

46. However, Plaintiff did not work any hours that were not either pre-approved by her manager, or otherwise in compliance with the requirements of the final warning.

47. Nor did Plaintiff have unauthorized photos of company property on her phone, but only images that were in the public domain.

48. Nor did Plaintiff say negative things about her colleagues, with the possible exception of instances in which her manager directly solicited feedback from Plaintiff about her colleagues, which her manager customarily did throughout Plaintiff's tenure.

## COUNT ONE

49. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

50. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 et seq.

51. At all times material herein, Defendant was the employer of Plaintiff, and Plaintiff was an employee of Defendant, pursuant to the FLSA, 29 U.S.C §§ 203(d) and (e).

52. In 2016 and 2017, Plaintiff's husband filed a number of complaints in a variety of venues against Pierce Manufacturing, Inc., a wholly owned subsidiary division of Defendant, including filing suit under the FLSA, all of which constitutes statutorily-protected activity pursuant to FLSA 29 U.S.C. § 215(a)(3).

53. In response to Plaintiff's husband's protected activities relating to Defendant, Defendant took adverse, retaliatory action against Plaintiff.

54. The FLSA prohibits an employer from taking adverse action against an employee who has engaged in protected activities. 29 U.S.C. § 215(a)(3).

55. The FLSA also prohibits an employer from taking adverse action against the spouse of an employee who engaged in protected activities, and as such affords the spouse the same protections and remedies. 29 U.S.C. § 215(a)(3).

56. By a pattern and practice illustrated by the actions and omissions described in this Complaint, Defendant acted willfully and knew, or showed reckless disregard for whether, its conduct was prohibited by the FLSA.

57. As a result of Defendant's willful violations of the FLSA, Plaintiff has been deprived of wages and various fringe benefits, and suffered economic harm including diminished future earning capacity, as well as tarnishment of her reputation, emotional distress, humiliation, and embarrassment.

58. Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and accordingly the FLSA allows for and requires remedies for Plaintiff, including, but not limited to, reinstatement, promotion, damages for lost wages and other compensatory relief, liquidated damages, pre-judgment interest, and attorney's fees. 29 U.S.C. § 216(b).

## CLAIM FOR RELIEF

Plaintiff requests that the Court grant the following relief:

    a.) At the earliest possible time, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, issue an Order declaring Defendant' actions as described in this Complaint as unlawful and in willful violation of the FLSA;

    b.) Issue an Order directing and requiring Defendant to reinstate Plaintiff, in the same capacity and, at minimum, in the same position but at the pay grade to which she would have been promoted had she not been discharged;

    c.) Issue an Order directing and requiring Defendant to pay Plaintiff damages in the form of reimbursement for unpaid wages;

    d.) Issue an Order directing and requiring Defendant to pay Plaintiff damages in the form of pre-judgment interest on unpaid wages;

e.) Issue an Order directing and requiring Defendant to pay Plaintiff liquidated damages in an amount equal to the amount of unpaid wages;

f.) Issue an Order directing and requiring Defendant to pay Plaintiff damages in the form of reimbursement for the monetary value of un-accumulated and/or unpaid fringe benefits including, but not limited to, employer contributions to Plaintiff's 401(k) retirement account;

g.) Issue an Order directing and requiring Defendant to pay Plaintiff compensatory damages for medical bills accrued as the result of the loss of her employer-sponsored health insurance coverage;

h.) Issue an Order directing Defendant to reimburse Plaintiff for the costs and fees, including attorney fees, expended and/or accrued in the course of bringing this action, and;

i.) Provide Plaintiff with any other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all triable issues.

Respectfully submitted this 13th Day of June 2019

**Tracy Ehmann**

Plaintiff, *pro se*

P.O. Box 2366

Appleton, WI 54912